# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BEATRICE JEAN BYRD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 8049 |
| ) | |
| HOMECOMINGS FINANCIAL ) | Judge Ruben Castillo |
| NETWORK, ) | Magistrate Nan R. Nolan |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Beatrice Jean Byrd ("Byrd"), brought this action against Defendant, Homecomings Financial Network ("HFN"), claiming that HFN violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedure Act ("RESPA"), the Truth In Lending Act ("TILA"), and state anti-fraud laws, while servicing Byrd's mortgage. (R. 1, Compl.) Presently before this Court is HFN's Motion to Dismiss the complaint.[1] (R. 9, Mot. to Dismiss.)

## FACTS

Byrd obtained a mortgage from HFN in February 1999. (R. 9, Mot. to Dismiss, Ex. A.) The Truth-In-Lending Disclosure form stated that Byrd would owe $511.98 on her mortgage monthly, beginning on April 1, 1999. (R. 15, Resp., Ex. H.) First National Bank of Chicago, acting as trustee,

---

[1] In its motion, HFN states that it "submits the amended complaint filed herein by plaintiff." However, this Court has not granted Byrd leave to file an amended complaint, nor is there an amended complaint in the record or attached to HFN's motion. The Court thus presumes this was a typographical error.

1

instigated foreclosure proceedings in Cook County Circuit Court[2] in September 1999, after Byrd allegedly defaulted on three months of payments. (*Id.*) The state court entered a Judgment of Foreclosure and Sale on December 30, 1999. (R. 9, Mot. to Dismiss, Ex. B.)

On February 5, 2001, Byrd filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois.[3] (R. 15, Resp. at 2.)[4] The foreclosure proceedings were stayed, and HFN was a creditor in the bankruptcy proceedings. (R. 9, Mot. to Dismiss at 2.) On August 17, 2001, the bankruptcy court modified the automatic stay and ordered Byrd to tender monthly mortgage payments to HFN in the sum of $511.98 each month, commencing with the March 1, 2001 payment. (R. 15, Resp., Ex. C.)

The parties allege no further facts until January 2003, when Byrd alleges that HFN stopped accepting her mortgage payments. On January 23, 2003, HFN sent Byrd a letter stating that Byrd was in default. (R. 17, Resp. ("Erratum"), Ex. C.) HFN returned Byrd's mortgage payments dated January 9, 2003; February 21, 2003; and March 9, 2003. (R. 17, Resp. ("Erratum"), Ex. D.) On March 10, 2003, Byrd's attorney sent a letter to HFN's attorney requesting payoff figures so that she could refinance her loan with HFN, and requesting further information about the January, February,

---

[2]Case Number 99 CH 12812.

[3]Case Number 01 B 3753.

[4]Byrd filed an amended response, "Plaintiff's Response (Erratum)," ten days after she filed her initial response to HFN's motion to dismiss, and one day after HFN filed its Reply brief. Although Byrd filed the amended response without leave of court, HFN has not objected to the additional response. The text of the responses do not differ, but they attach different documents. As these documents consist of matters in the public record, this Court may take judicial notice of the documents without converting the motion into a motion to dismiss. *See Palay v. U.S.*, 349 F.3d 418, 425 (7th Cir. 2003). Therefore, the Court will consider the documents attached to both responses, and the Court will cite to the responses either as "Response" or "Response (Erratum)."

and March mortgage payments. (R. 17, Resp. ("Erratum"), Ex. D.)

On July 23, 2003, Byrd filed a motion for preliminary injunction to stop foreclosure proceedings on her home. (R. 15, Resp., Ex. E.) On August 12, 2003, Byrd filed a motion in bankruptcy court to compel HFN to comply with the automatic stay and remove Byrd's property from foreclosure proceedings. (R. 17, Resp. ("Erratum"), Ex. D.) The bankruptcy court entered an "agreed order" on August 25, 2003, reinstating the automatic stay as to HFN and deeming Byrd "current with respect to her post-petition mortgage payments." (R. 17, Resp. ("Erratum"), Ex. E.)

On October 10, 2003, Byrd received a notice from HFN stating that Byrd was delinquent in the amount of $8,326.69, including two payments for December 2002 and January 2003 at $511.98 each; two payments for February 2003 and March 2003 at $791.16 each; four payments for April, May, June, and July 2003 at $802.45 each; three payments for August, September, and October 2003 at $735.87 each; ten late charges for December 2002 through September 2003 at $25.60; and an attorney fee for default notice at $50.00. (R. 15, Resp., Ex. G.) HFN warned that if the defaults were not cured before October 24, 2003, HFN would seek modification of the stay and leave to proceed with foreclosure. (*Id.*) Accordingly, on December 5, 2003, HFN filed a notice of default and made a motion in bankruptcy court to vacate the August 25, 2003 order and modify the stay. (R. 16, Reply, Ex. B.) On January 14, 2004, the state court entered a judgment of foreclosure. (*Id.*) Subsequently, on April 14, 2004, Byrd filed a motion in bankruptcy court to vacate the order modifying the stay.[5] (R. 15, Resp., Ex. D.)

The bankruptcy court ruled on both HFN's and Byrd's motions on August 4, 2004. The

---

[5] As there was no order modifying the automatic stay at this point, this Court presumes, as the Bankruptcy Court did, that Byrd actually sought to reinstate the automatic stay after HFN's December 5 default notice.

bankruptcy court entered an order vacating its August 25, 2003 order and imposing injunctive relief with a default repayment order. (R. 16, Reply., Ex. B.) The court stayed the default notice of December 5, 2003, and enjoined HFN from proceeding with the mortgage foreclosure until the termination of the stay. (*Id.*) The bankruptcy court further held that: (1) the January 14, 2004 judgment of foreclosure remains valid and proper; (2) Byrd must tender to HFN monthly mortgage payments of $644.90; (3) Byrd must submit payment of $1247.62 each month from August 2004 through May 2005; and (4) if Byrd fails to tender any two payments set forth, upon fourteen days written notice the stay shall be automatically modified to permit HFN to commence or continue with mortgage foreclosure or state court proceedings. (*Id.*)

On November 19, 2004, Byrd submitted a Qualified Written Request to HFN, purportedly pursuant to 12 U.S.C. §2605(e) of the RESPA, requesting account information, payment history, and other information regarding her loan. (R. 17, Resp., Ex. A.) HFN acknowledged receipt of the Qualified Written Request in a letter dated January 14, 2005, but HFN did not provide the requested information. (R. 17, Resp., Ex. B.)

The foreclosure sale took place on December 14, 2004, pursuant to the Judgment of Foreclosure. (R. 9, Mot. to Dismiss, Ex. D.) Byrd filed the instant case on December 13, 2004, and HFN filed its motion to dismiss on April 26, 2005. Rather than respond to the complaint, Byrd sets forth additional factual allegations in an apparent attempt to file an amended complaint without leave of Court.[6] While HFN notes this in their reply brief, they have not moved to strike Byrd's response

---

[6]The impropriety of Byrd's response notwithstanding, Byrd's well-pleaded factual allegations are directly supported by matters in the public record or admitted to by HFN. Therefore, the Court has considered Byrd's responses in their entirety in ruling on this motion to dismiss.

4

or filed any objection with the Court.

The judge in the state court foreclosure proceeding entered an Order Confirming Report of Sale and Order for Possession on January 3, 2005, finding that First National Bank of Chicago, as Trustee, has "in all manner proceeded properly and in due form with respect to the sale, the foreclosure and the acceptance of or refusal to accept any amounts due or tendered" to it during the pendency of the proceeding. (R. 9, Mot. to Dismiss, Ex. C.) On April 27, 2005, the bankruptcy court entered an order dismissing Byrd's bankruptcy case for material default because Byrd failed to make the payments required under the terms of the plan. (R. 16, Reply, Ex. A.)

## LEGAL STANDARD

HFN filed this motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under FRCP 12(b)(1) and 12(b)(6), the Court must accept as true the complaint's well-pleaded facts and allegations and draw all reasonable inferences from those allegations in the plaintiff's favor. *See Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001) (FRCP 12(b)(1)); *Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989) (FRCP 12(b)(6)).

If the issues are jurisdictional, the Court has authority under Rule 12(b)(1) to look behind the plaintiff's allegations and make factual findings for purposes of assessing its subject matter jurisdiction. *Palay v. U.S.*, 349 F.3d 418, 424-25 (7th Cir. 2003). In contrast, the court will deny a 12(b)(6) motion to dismiss if there is any set of facts under which the plaintiff might prevail. *LaSalle Nat. Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1996). However, "dismissal under Rule 12(b)(6) is appropriate when a defendant raises *res judicata* as an affirmative defense and

5

it is clear from the complaint's face, and matters of which the district court can take judicial notice, that the plaintiff's claims fail as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 (2nd Cir. 2000). Accordingly, this Court has considered public records from the state court foreclosure action and Byrd's bankruptcy court proceedings.

## ANALYSIS

HFN presents a variety of arguments for dismissal of Byrd's complaint for failure to state a claim, as well as one ground for dismissal of Byrd's TILA claim for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine and on *res judicata* grounds. In its reply brief, HFN argues for the first time that *res judicata* and the *Rooker-Feldman* doctrine apply to bar Byrd's RESPA and FDCPA claims as well because Byrd's claims either were or could have been raised in the state court or bankruptcy court action. In general, "arguments raised for the first time in a reply brief are [] waived." However, *Rooker-Feldman* is jurisdictional in nature, and thus it may be raised at any time by the parties, or by the court *sua sponte*. *Lewis v. Anderson*, 308 F.3d 768, 771-72 (7th Cir. 2002) (citations omitted). In addition, "[a]lthough claim preclusion is an affirmative defense that can be waived, we have recognized that courts, in the interest of judicial economy, may raise the issue of preclusion *sua sponte* even when a party fails to do so." *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996) (citations omitted). Accordingly, the Court has analyzed each of Byrd's claims under the *Rooker-Feldman* and *res judicata* doctrines.

The Court finds that *Rooker-Feldman* applies to each of Byrd's claims, and that the Court does not have subject-matter jurisdiction over them. In the alternative, the Court finds that Byrd's state law, TILA, and FDCPA claims are barred by res judicata, and Byrd fails to state a claim under RESPA.

I.  *Rooker-Feldman*

The Court will determine first whether it has subject-matter jurisdiction to consider Byrd's claims because "[w]here *Rooker-Feldman* applies, lower federal courts have no power to address other affirmative defenses, including *res judicata*. . . ." *Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 535 (7th Cir. 2004) (citations omitted). The *Rooker-Feldman* doctrine prohibits "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521-22 (2005). *Rooker-Feldman* only applies if the plaintiff had a reasonable opportunity to raise her claims in the state court proceedings. *Taylor*, 374 F.3d at 534-35.

In this case, the state court entered an order of foreclosure against Byrd, and then entered an Order Confirming Report of Sale and Order for Possession after the foreclosure sale took place. Now, Byrd is attempting to collaterally attack the state court's judgment by arguing that the foreclosure was improper for a laundry list of reasons, including HFN's alleged violations of the FDCPA, RESPA, and TILA. Byrd's allegations complaining of the "wrongful foreclosure actions" belie her desire to seek review of the state court's judgment of foreclosure and confirmation of sale. (R. 1, Compl., ¶ 9; R. 15, Resp., ¶ 18.)

Byrd's situation is comparable to that of the plaintiff in *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726 (7th Cir. 1993). In *GASH*, the plaintiff, dissatisfied with the state court's confirmation of the sale of its property at a foreclosure sale, filed a § 1983 suit against the Village of Rosemont. *Id.* at 729. The Seventh Circuit held that the district court did not have jurisdiction to hear the plaintiffs' claims because they essentially sought review of the state court foreclosure

7

judgment. *Id.* Like the plaintiff in *GASH*, Byrd "did not suffer an injury out of court and then fail to get relief from state court; [her] injury came from the judgment confirming the sale" of the property. *Id.* The Seventh Circuit has applied *Rooker-Feldman* to numerous other attempts by plaintiffs to obtain review in federal court of state court foreclosure judgments by alleging violations of various federal laws. *See, e.g., Holt v. Lake County Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) (*Rooker-Feldman* barred the district court from hearing the plaintiff's Section 1983 action against county officials, alleging denial of due process, where a state court judgment evicting the plaintiff from his property caused the injury he sought to redress in federal court); *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 536 (7th Cir. 2004) (the plaintiff's claims that the defendant committed fraud by instituting a wrongful foreclosure action against her in violation of two federal statutes were all either de facto appeals of, or were inextricably intertwined with, the state court's judgment of foreclosure); *Ritter v. Ross*, 992 F.2d 750, 754-55 (7th Cir. 1993) (because plaintiffs would have no claim "but for" the state court tax lien foreclosure judgment, *Rooker-Feldman* precluded the district court from hearing a § 1983 claim that a county deprived plaintiffs of property without due process by selling the property at an auction to recover unpaid taxes).

Byrd had a reasonable opportunity to raise her claims in the state court proceedings because state and federal courts have concurrent jurisdiction over RESPA, TILA and FDCPA claims. *See Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill.2d 472, 481, 713 N.E.2d 543, 547, (1999) (ruling on the merits of plaintiff's RESPA claims); *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 421, 775 N.E.2d 951, 962 (2002) (ruling on the merits of plaintiff's TILA claims); *Jacobson v. Knepper & Moga, P.C.*, 185 Ill.2d 372, 376, 706 N.E.2d 491, 493 (1998) (considering FDCPA-related claims). In fact, Byrd raised her objections to the foreclosure proceedings at various

times during the state court proceeding, most notably by filing a July 23, 2003 motion for preliminary injunction, which attached her bankruptcy court motion to compel HFN to comply with the automatic stay and remove her property from foreclosure proceedings. (R. 15, Resp., Ex. E.) In fact, even after the foreclosure sale took place on December 14, 2004, Byrd had another three weeks to raise her claims in state court before the state court entered its final judgment confirming the sale on January 5, 2005.

Absent the state court's judgment of foreclosure and subsequent confirmation of the sale of Byrd's property, Byrd would not now have the injury she seeks to redress. All of Byrd's filings attempt to remedy this one injury: the foreclosure on her home. Thus, *Rooker-Feldman* applies, and the Court does not have subject-matter jurisdiction to hear Byrd's claims.

## II. *Res Judicata*

Even if this Court had jurisdiction to hear Byrd's claims, *res judicata* would bar them. *Res judicata*, also known as claim preclusion, prohibits parties from relitigating issues that were decided in a prior lawsuit, as well as any issues that could have been raised in the previous lawsuit. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). In this case, most of Byrd's claims are barred by *res judicata* because they were or could have been raised in the prior state court action.

When the adjudication argued to have preclusive effect was issued by a state tribunal, as in this case, courts look to the law of the state in which the underlying judgment was issued – here, Illinois. *Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 916 (7th Cir. 2005). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court judgments the same preclusive effect they would have in state court. *Licari v. City of Chi.*, 298 F.3d 664, 666-67 (7th Cir. 2002). In Illinois, "[w]hen res judicata is established as a bar against the prosecution of a second action

9

between the same parties upon the same claim or demand it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose." *Nowak v. St. Rita High Sch.*, 197 Ill.2d 381, 389, 757 N.E.2d 471, 477 (2001). *Res judicata* applies where: (1) a final judgment on the merits was rendered by a court of competent jurisdiction; (2) there is an identity of parties or their privies; and (3) there is an identity of causes of action. *Id.*

Each of these prongs is satisfied in this case. First, there was a judgment on the merits in state court when the court confirmed the foreclosure sale on January 3, 2005.[7] *Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 919 (7th Cir. 2003) (collecting Illinois cases holding that an order confirming a foreclosure sale is a final judgment on the merits). Second, the same parties or their privies were involved in the state and federal cases. Although the plaintiff in the state court case was officially First National Bank of Chicago, "[t]he trustee in bankruptcy is the creditors' representative, and therefore a judgment for or against the trustee is *res judicata* in a suit on the same claim by a creditor, provided no conflict of interest made the trustee's representation inadequate." *Matter of Met-L-Wood Corp.*, 861 F.2d 1012, 1017 (7th Cir. 1988) (citations omitted). HFN, as a creditor, was thus in privity with First National Bank, satisfying the second prong of the *res judicata* test.

In establishing the identity of the claims, the third requirement of *res judicata*, Illinois employs the "transactional" test, which provides that "the assertion of different kinds or theories of relief still constitutes a single cause of action for purposes of *res judicata* if a single group of operative facts gives rise to the assertion of relief." *Nowak*, 197 Ill.2d at 391-92, 757 N.E.2d at 478

---

[7]The bankruptcy court also issued a judgment on the merits when it dismissed Byrd's bankruptcy case for material default. *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994) (default judgment in bankruptcy court is a final judgment with *res judicata* effect).

10

(citations omitted). A single group of operative facts surrounding the foreclosure of Byrd's mortgage gave rise to all of Byrd's different theories of relief, and Byrd either raised, or could have raised, each of her current arguments in the prior state court proceeding.

Each of Byrd's legal theories arises from the same "transaction": the foreclosure of Byrd's mortgage. First, Byrd's arguments that HFN violated the Truth In Lending Act, 12 C.F.R.§ 226.20(c), are based on the same factual allegations that Byrd previously raised in state court, primarily that HFN improperly increased Byrd's monthly mortgage payments without explanation or notice. (R. 9, Compl. 4; R.17, Resp. at 3.) As Byrd could have, but did not, raise this claim as a defense in the state court, *res judicata* prohibits Byrd from raising the issue now. *See, e.g., Westbank v. Maurer*, 276 Ill. App. 3d 553, 562, 658 N.E.2d 1381, 1389 (2nd Dist. 1995) (violations of TILA may be raised as an affirmative defense to a state court foreclosure action).

Second, *res judicata* bars Byrd's allegation that HFN violated unenumerated state laws that prohibit unfair and deceptive practices and acts. A single group of operative facts – dealing with HFN's attempt to collect the money owed on Byrd's mortgage and its decision to foreclose on Byrd's mortgage – underlie these fraud claims as well. Byrd could have raised any claim that HFN violated Illinois common law or the Illinois Consumer Fraud and Deceptive Business Practices Act during the state court foreclosure proceedings. *See, e.g., Whitaker v. Ameritech Corp.*, 129 F.3d 952, 956-57 (7th Cir. 1997) (RICO claims were barred by *res judicata* because fraud defense not raised in the foreclosure proceeding in state court).

Third, Byrd's FDCPA claims are barred by *res judicata* because they also rely on the same group of operative facts. Although the Seventh Circuit did not apply *res judicata* to the FDCPA claim in *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997), that case is distinguishable.

11

In *Whitaker*, Ameritech sued Whitaker in the initial state court action for failure to pay her bills, and then Whitaker sued Ameritech in federal court alleging a violation of the FDCPA through abusive debt collection practices. *Id.* The suit by Ameritech over debt attachment and the suit by Whitaker over debt collection were two different transactions under the Illinois test. *Id.* By contrast, in the instant case the transaction has always been the same: a state court action to foreclose on Byrd's mortgage. Byrd's allegations that HFN violated the FDCPA stem from the action for foreclosure and HFN's inextricably linked actions to recover money Byrd owed on her mortgage.

## III.  RESPA

Finally, Byrd alleges that HFN violated Sections 12 U.S.C. §§ 2605 and 2609 of RESPA. Even if the Court has jurisdiction over Byrd's claims, these claims fail on the merits. First, Byrd's section 2609 claim fails because there is no private right of action under section 10 of RESPA, 12 U.S.C.A. § 2609. *Allison v. Liberty Sav.*, 695 F.2d 1086, 1091 (7th Cir. 1982). Second, while Byrd fails to identify which subsection of § 2605 HFN allegedly violated, only Section 2605(e) could apply in this case. Section 2605 requires a loan servicer, such as HFN, to respond to a borrower's inquiries within sixty days when it receives a qualified written request from the borrower or her agent for information relating to the servicing of the loan. 12 U.S.C.A. § 2605(e)(2). Byrd's lawyer submitted a qualified written request to HFN on November 19, 2004, but Byrd claims that HFN never provided the requested information in violation of RESPA. (R.17, Resp., Exs. A, B.) RESPA, 12 U.S.C.A. § 2605(f), however, requires a party to show actual damage from a violation of § 2605(e)(2). Byrd does not and cannot allege actual damage. The only actual damage Byrd alleges is the foreclosure of her mortgage. However, the damage had already been done by the state court's confirmation of the foreclosure sale on January 5, 2005, approximately three weeks before the sixty

day time limit to respond to Byrd's qualified written request expired. Therefore, Byrd fails to state a claim under RESPA as a matter of law.

## CONCLUSION

For the reasons stated above, HFN's motion to dismiss is granted (R. 9), and the case is dismissed with prejudice. The Clerk of the Court is directed to enter final judgment against Byrd on all of her claims.

ENTERED:

Ruben Castillo
United States District Judge

**Dated:** December 29, 2005